UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LINES+ANGLES, INC.,**<br><br>　　　　　　　　　　**Plaintiff,**<br><br>　　　　　v.<br><br>**ADAGIO TEAS, INC.,**<br><br>　　　　　　　　　　**Defendant.** | Civ. No. 20-00831-KM-MAH<br><br>**OPINION** |

**MCNULTY, U.S.D.J.:**

　　　　The plaintiff, Lines+Angles, Inc. (formerly Stockfood America, Inc.), alleges that the defendant, Adagio Teas, Inc. ("Adagio"), infringed its copyright in a photographic image of a pumpkin pie by displaying that image on its website. Lines+Angles seeks summary judgment as to the two essential elements of a copyright infringement claim (ownership of a valid copyright and infringement by defendant), and also as to whether Adagio's alleged infringement was willful. Adagio opposes each aspect of the motion. For the reasons stated herein, the motion of Lines+Angles will be granted as to ownership and infringement, but denied as to willfulness, which poses issues of fact.

　　**I.　Background**[1]

---

[1] 　　For purposes of this motion, I consider the parties' statements of material facts, as well as the deposition testimony and documentary evidence. Facts not contested are assumed to be true.

　　　　Certain record items will be cited as follows:

　　　　PSMF = Plaintiff Lines+Angles's statement of material facts (DE 48-2)

　　　　DRSMF = Defendant Adagio's responsive statement of material facts (DE 51-11)

　　　　Pl. Br. = Plaintiff Lines+Angles's brief in support of summary judgment (DE 48-1)

　　　　Opp. = Defendant Adagio's brief in opposition to summary judgment (DE 51).

1

Defendant Adagio is an online retailer of tea and tea accessories. (PSMF ¶ 6). Plaintiff Lines+Angles is a photographic agency which maintains a database of stock food images, videos, and other features that it licenses to third parties. (*Id.* ¶ 1). At the time that the infringement occurred, Lines+Angles was known as Stockfood America, Inc., which was then a wholly owned subsidiary of StockFood GmbH, a Germany corporation.[2] (*Id.*)

Stockfood America acts as a licensing agent for photographers. The image at issue in this case, a photograph of a pumpkin pie, was taken by Paul Poplis Photography and registered with the United States Copyright Office, Registration Number VA 1-652-306, on March 13, 2008. (*Id.* ¶ 5.) It is undisputed that Poplis granted an exclusive license to Stockfood America on July 31, 2009, though Adagio disputes the degree to which Stockfood America was an *exclusive* licensee at the time of the alleged infringement. (DE 50-2, Ex. B; DSMF ¶ 1–3.) In the Spring of 2020, plaintiff discovered that the copyrighted work at issue was being used without permission on Adagio's website. (PSMF ¶ 9, 11–12.) It appears that the photograph was uploaded to Adagio's website by a non-party to this case, who used the picture to illustrate their custom "Perfect Pumpkin Pie Chai" tea blend. (PSMF ¶ 10, DE 49-1 at 5.) Although anyone can create their own tea blend and upload related information to defendant's website, the blender is required to affirm that that they have the necessary rights to upload the image. (DE 51-1, ¶ 12, 14.)

In a prior opinion between these two parties, I held that Stockfood America, as an exclusive licensee, had standing to sue for infringement even if the photographer retained copyright to the photographs. *See Stockfood Am., Inc. v. Adagio Teas, Inc.*, 475 F. Supp. 3d 394, 411 (D.N.J. 2020). Here, however, there is an additional complication. In 2010, Stockfood GmbH signed an agreement with Getty Images that granted Getty a "world-wide exclusive

---

[2]   GmbH is an acronym of Gesellschaft mit beschränkter Haftung, a type of German corporate form similar to an LLC. Throughout this opinion, I refer to the plaintiff as Stockfood America when discussing the infringement, because that was the company's name when the infringement occurred.

2

license to distribute" Stockfood GmbH's images (the "Getty Agreement"). (DE 51-10, Ex. D., § 2.1.) It was Stockfood America, rather than Stockfood GmbH, that executed the agreement with Poplis to become the exclusive licensee of the image at issue in this case. Nevertheless, plaintiff has produced evidence showing that Getty licensed the image dozens of times. (DE 51-9, Ex. C.) The Getty Agreement includes a section related to unauthorized use of the images, which gives Getty the authority the first right to sue with respect to the unauthorized use, but states "Should Getty Images or its delegates decline to pursue such unauthorized use in the first instance, [Stockfood GmbH] shall be entitled to pursue such claims on its own behalf.... Nothing in this Section 2.7 shall prevent [Stockfood GmbH] from pursuing any unauthorized use claims where Getty Images discontinues the pursuit of any unauthorized use prior to reaching a settlement with an infringer." (DE 51-10, § 2.7.)

Stockfood America filed the complaint in this case on January 24, 2020, asserting copyright infringement pursuant to 17 U.S.C. §§ 106(1), and 501. (DE 1.) The parties failed to reach a settlement. (DE 33, 34.) In November 2020, Shannon Day purchased Stockfood America, changing its name to Lines+Angles, Inc. and a motion to substitute parties was granted in January 2022. (DE 47.) On January 14, 2022, Lines+Angles filed a motion for summary judgment on liability. (DE 48). Adagio filed a brief in opposition (DE 51) and Lines+Angles filed a reply (DE 53). Oral argument was held on June 28, 2022. (DE 56.)

## II.   Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears

the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met the threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which the nonmoving party must rely to support its assertion that genuine issues of material fact exist). In deciding a motion for summary judgment, the court's role is not to evaluate and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.   Discussion

Plaintiff's motion for partial summary judgment requires a decision on three issues. First, I must determine if Stockfood America owned the copyright in the image and thus had standing to sue. Second, I must decide if Adagio infringed Stockfood America's copyright. And third, I must determine if that infringement was willful. I may grant summary judgment on any of these elements only if I find that there is no dispute of material fact as to that particular element. I find that Stockfood America is an exclusive licensee with standing to sue and that Adagio infringed the copyright, and therefore GRANT summary judgement on those first two elements. I find, however, that disputed issues of material fact require me to DENY summary judgment as to willfulness.

### a. Ownership and Standing

The Copyright Act of 1976 provides that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled, . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501. The Act enumerates six activities, including reproduction, transfer, and public display of the copyrighted work, that the copyright owner has the exclusive right "to do" and "to authorize." 17 U.S.C. § 106.[3] "Anyone who violates any of the exclusive rights of the copyright owner, that is, anyone who trespasses into [the owner's] exclusive domain by using or authorizing the use of the copyrighted work . . . is an infringer of the copyright." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433, (1984) (quotation and citation omitted).

A claim for copyright infringement involves two "essential elements: ownership of copyright, and copying by the defendant." *Dam Things from Denmark, a/k/a Troll Company ApS v. Russ Berrie & Company, Inc.*, 290 F.3d

---

[3] Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106.

548, 561 (3d Cir. 2002) (citing *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.,* 797 F.2d 1222, 1231 (3d Cir. 1986)); *see also Winstead v. Jackson*, 509 Fed. App'x 139, 143 (3d Cir. 2013) (stating that "[t]o establish a claim of copyright infringement, the plaintiff must establish ownership of a valid copyright, and unauthorized copying of protectable elements of the plaintiff's work."). In addition, exclusive licensees are considered to have a sufficient ownership interest to confer standing to sue for infringement. *Stockfood Am.*, 475 F. Supp. 3d at 411; *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 (2d Cir. 1982).

The core of Adagio's argument is that the agreement between Stockfood, GmbH and Getty Images undermines plaintiff's exclusivity, rendering plaintiff a non-exclusive licensee without standing to sue. Essentially, Adagio argues that because Stockfood GmbH granted Getty an exclusive world-wide license to distribute the pumpkin pie image, Stockfood America must be a non-exclusive licensee, and that such a non-exclusive licensee lacks standing to sue. (Opp. at 10.)

The issue is complicated by a certain laxity with respect to corporate formalities. Poplis granted an exclusive license to Stockfood America, not Stockfood GmbH.[4] Yet it was Stockfood GmbH that entered into the Getty Agreement. Receiving this grant of rights from Stockfood GmbH, which arguably did not possess them, Getty went on to license the image to others dozens of times, apparently without any complaint from Stockfood America. It is thus difficult to determine whether Stockfood America and Stockfood GmbH should be treated as distinct entities or the same company at the time of the infringement. I find, however, that the outcome would be the same under either analysis: Stockfood America has enough of an interest to give it standing to sue.

---

[4] Adagio does not significantly rebut the evidence that Poplis granted an exclusive license to Stockfood America and that, absent the Getty agreement, Stockfood America would have standing as exclusive licensee to sue for infringement, which is in line with my prior opinion in the related matter. *Stockfood Am.*, 475 F. Supp. 3d at 411. The issue is whether the Getty agreement changes that.

First, assume *arguendo* that Stockfood America and Stockfood GmbH are entities that successfully maintained their separate status. If so, then the agreement between Stockfood GmbH and Getty is of no importance. Stockfood GmbH simply granted to Getty rights that it did not possess. Stockfood America, then, would have had standing to sue Getty for licensing the pumpkin pie image because Stockfood America had exclusive rights to that image. It did not do so, but that does not change the fact that Stockfood America was the sole and exclusive licensee of the image. In this more straightforward scenario, Stockfood America is now attempting to enforce its rights as the exclusive licensee of the pumpkin pie image and unquestionably has standing to do so.

Second, assume in the alternative the less straightforward scenario that Stockfood GmbH and Stockfood America so melded their affairs that they should be treated as a single entity (let's call it "Stockfood Global"). If so, then Stockfood Global did, *via* the Getty Agreement, effectively grant Getty the right to distribute the pumpkin pie image. It is uncontested that Getty was able to, and did, license the pumpkin pie image to third parties. (DE 51-7 at 69–71.) It is likewise uncontested that Stockfood America had exclusive rights *vis-à-vis* Poplis. The issue, however, is whether by signing the Getty Agreement, Stockfood Global has given up its right (or its component entities' right) to sue. I find that, according to the language of its contract with Getty, it has not. I therefore find that Stockfood America has standing to sue for infringement.

This facts of this case are unlike a situation in which a photographer purports to grant exclusive licenses to multiple distributors, making no distributor the "sole and exclusive" licensee. *See Stockfood, Am.*, 475 F. Supp at 410 (discussing *DRK Photo v. McGraw-Hill Global Education Holdings, LLC*, 870 F.3d 978 (9th Cir. 2017)). Here, instead, we have not a hub-and-spoke array but a chain of licenses. Poplis contracted with Stockfood Global as his sole and exclusive agent, and Stockfood Global then contracted with Getty to distribute the images. There is no evidence in the record, by the way, that Poplis was even aware of the Getty Agreement. To determine the effect of the

Getty Agreement on Stockfood Global's rights, we must look at the language of the agreement itself. *Id.* The Getty Agreement allows Getty to sue for infringement, but in cases where Getty has chosen not to pursue legal action, it clearly and unambiguously reserves to Stockfood [Global, in this scenario] the right to sue for infringement.[5] (DE 51-10, § 2.7.) Here there is no indication that Getty has taken any action against Adagio, and thus, according to the terms of the Getty Agreement, the right to do so reverts to Stockfood [Global]. In addition, the Getty Agreement allows only one or the other (Getty, or Stockfood, but not both) to bring suit for infringement. In short, I find that Stockfood Global, holding an exclusive license from Poplis, may enter into agreements to distribute Poplis's photographs without automatically losing its ability to sue for infringement.

The Stockfood GmbH issue, while knotty, is a detour. Whether Stockfood GmbH and Stockfood are treated as the same entity or separate entities, the result is the same. Under either theory, Stockfood America has standing to sue Adagio for infringement as the exclusive licensee of the pumpkin pie image.

### b. Infringement

Having established that it has standing to bring a suit for infringement, Lines+Angles (as Stockfood America's successor) seeks summary judgment as to whether Adagio infringed its copyrights. Adagio does not dispute that the pumpkin pie image was posted to its website, but argues briefly that it has raised a genuine factual dispute as to the interest, if any, that was conveyed by the contract between Poplis and Stockfood America. (Opp. at 12–13.) This argument, however, is foreclosed by the reasoning of my opinion in the prior case between these parties, and by my analysis of the contract between Poplis and Stockfood America. I have found that Stockfood America was the exclusive licensee of Poplis's image and thus that if Adagio copied the image without

---

[5] I also find that this agreement is not one that provides Getty or Stockfood with a "bare right to sue," which is impermissible under the Copyright Act. See *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 404 (2d Cir. 2018). Rather Stockfood America retains a variety of rights including the right to sue if Getty chooses not to.

permission it infringed Stockfood America's copyright. I find that by allowing the image to be posted to its website, Adagio infringed plaintiff's copyrights.

Accordingly, I grant summary judgment in favor of Stockfood as infringement.

### c. Willfulness

Having established infringement, Stockfood also seeks summary judgment on the issue of whether Adagio's infringing conduct was willful. (Pl. Br. at 10–14.) This determination potentially affects the amount of damages Stockfood could recover. *See* 17 U.S.C. § 504(c)(2).

Stockfood cites several precedents from the Second Circuit holding that willfulness can be established at the summary judgment stage. (Pl. Br. at 10.) Adagio does not dispute that as an abstract proposition. Rather, it focuses on the evidence for Stockfood America's contentions, arguing that Stockfood has not established the lack of a genuine issue of material fact as to Adagio's willfulness. (Opp. at 13–18.)

"In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). The statute does not define willfulness, nor has the Third Circuit established a comprehensive test. The Second Circuit, however, has adopted the following standard:

> To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights. Willfulness may be proven on summary judgment, so long as the court draws all reasonable inferences in the defendant's favor.

*Jose Luis Pelaez, Inc. v. McGraw-Hill Global Educ. Holdings LLC*, 399 F. Supp. 3d 120, 146 (S.D.N.Y. 2019) (citing, *inter alia, Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)). Both parties cite the Second Circuit standard, and I adopt it *arguendo*.

Stockfood America argues that the evidence shows both "reckless disregard" for and "willful blindness" to its rights. It points to the previous case between these parties as evidence that Adagio is a repeat offender and that its infringement can be regarded as willful. (Pl. Br. at 12.) In addition, Stockfood America argues that Adagio is knowledgeable about copyright law, which bolsters the conclusion that any infringement was willful. (*Id.* at 13.)

Adagio counters that it was unaware that a third party uploaded a copyrighted image to its website. (Opp. at 14.) This situation is different from that of the prior case, which involved images that Adagio itself had used on its website. *Stockfood, Am.*, 475 F. Supp. at 399–400. Adagio claims that it would have immediately taken down the image if it had ever been informed by Stockfood America that the image infringed its copyright, and that it did take the image down as soon as this lawsuit was filed. (Opp. at 16–17.) In addition, Adagio has a policy that requires its employees to check on images that its customers upload – even though it requires the uploader to affirm that he or she has the rights to the image – to double check whether the image is subject to copyright. (*Id.* at 14-15.) That policy, says Adagio, also tends to blunt any inference of willfulness.

I find that Lines+Angles has not pointed to significant direct evidence that Adagio's conduct was actually willful. Rather, it points to some indirect or collateral evidence from which, it claims, one could infer recklessness. Largely, however, it attempts to bootstrap my finding of infringement in the prior case into a finding of willfulness in this case. At the summary judgment stage, I must draw reasonable inferences in the non-movant's favor. Here, Adagio has put forth some evidence, such as its policy of examining uploaded images and its immediate removal of the infringing image upon the filing of this lawsuit, that its infringement was not willful. There is enough of a clash in the proofs here to raise a genuine dispute of material fact. Accordingly, summary judgment is denied as to the issue of willfulness.

### IV. Conclusion

For the reasons set forth above, the motion of Lines+Angles for summary judgment (DE 48) is **GRANTED** as to liability (ownership and infringement), but **DENIED** as to whether Adagio's conduct was willful.

Dated:  July 5, 2022

/s/ Kevin McNulty

_____

**HON. KEVIN MCNULTY, U.S.D.J.**